UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY,<br><br>                                   Plaintiff,<br><br>            v.<br><br>DEPARTMENT OF HOMELAND SECURITY and<br>DEPARTMENT OF STATE,<br><br>                                   Defendants. | **COMPLAINT** |

Plaintiff THE NEW YORK TIMES COMPANY ("The Times"), by and through its undersigned attorneys, alleges as follows:

1.       This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), to obtain an order for the production of agency records from the United States Department of Homeland Security ("DHS") and the United States Department of State ("State") in response to FOIA requests made by The Times. These requests seek records about the government's March 2025 efforts to summarily deport Venezuelan immigrants to a Salvadorian prison despite a federal judge's order to the contrary.

## PARTIES

2.       Plaintiff The New York Times Company publishes *The New York Times* newspaper and www.nytimes.com. The Times is headquartered in this judicial district at 620 Eighth Avenue, New York, NY, 10018.

3.       DHS and State are agencies of the federal government that have possession and control of the records that The Times seeks.

## JURISDICTION AND VENUE

1

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

5.     Venue is premised on Plaintiff The New York Times Company's place of business and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**LEGAL FRAMEWORK**

6.     FOIA requires that agencies make a determination as to FOIA requests within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i).

7.     FOIA allows agencies to extend that 20-business-day deadline by 10 business days—for a total of 30 business days—in the event of "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). But an agency invoking the "unusual circumstances" provision must satisfy certain procedural requirements, such as providing timely written notice to the requester, explaining the unusual circumstances, and stating "the date on which a determination is expected to be dispatched." *Id.*

8.     "In order to make a 'determination' within the statutory time periods . . . the agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) (Kavanaugh, J.); *see also* 5 U.S.C. § 552(a)(6)(A)(i)(I) (specifying that a determination must include "the reasons therefor").

9.     If any agency denies a FOIA request, the requester has the right to administratively appeal that adverse outcome. *See* 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). The statute then requires the agency to make a determination on the administrative appeal of a FOIA denial within 20 business days. *See id.* § 552(a)(6)(A)(ii).

10.    FOIA provides that a requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with" the statutory deadlines. 5 U.S.C. § 552(a)(6)(C)(i).

## FACTUAL BACKGROUND

### President Trump's Invocation of the Alien Enemies Act

11.    On March 14, 2025, President Trump signed a proclamation invoking the Alien Enemies Act of 1798 ("AEA") against the Venezuelan gang Tren de Aragua. Yan Zuang & Tim Balk, *A Timeline of Legal Battles Over Trump's Use of the Alien Enemies Act*, N.Y. Times (Sept. 3, 2025), https://www.nytimes.com/article/alien-enemies-act-timeline.html [hereinafter *Timeline*]. The proclamation marked the fourth time that the AEA had been invoked in the history of the United States, and the first time since World War II, when it was used to authorize the internment of people with Japanese, German, and Italian ancestry. Tim Balk, *A History of the Alien Enemies Act of 1798*, N.Y. Times (Mar. 21, 2025), https://www.nytimes.com/2025/03/21/us/politics/trump-alien-enemies-act-history.html.

12.    The proclamation became public the next day, March 15, and litigation soon ensued. The American Civil Liberties Union ("ACLU") filed a lawsuit in the United States District Court for the District of Columbia seeking to enjoin implementation of the proclamation. The case, captioned *J.G.G. v. Trump* (No. 1:25-cv-00766), was assigned to Chief Judge James E. Boasberg.

13.    Events moved quickly on March 15. At an emergency court hearing in *J.G.G.*, it became clear that federal agents intended to imminently deport people based on the proclamation. ACLU lawyers represented that Venezuelan immigrants had already been loaded onto planes leaving the United States. *See Timeline*. Judge Boasberg ordered the government to halt these deportations. Tim Balk, *Judge Blocks Deportations of Venezuelans Under Wartime Law*, N.Y.

Times (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/us/politics/trump-alien-enemies-act-deportations-venezuelans.html.

14.     But some planes carrying deportees were already in the air. The next day, the President of El Salvador, Nayib Bukele, announced that the deportees were being held at Centro de Confinamiento del Terrorismo ("CECOT"), a notorious maximum-security prison in that country. Mattathias Schwartz, *With Deportations, Trump Steps Closer to Showdown With Judicial Branch*, N.Y. Times (Mar. 16, 2025), https://www.nytimes.com/2025/03/16/us/constitutional-crisis.html. The parties in *J.G.G.* have continued to vigorously dispute whether the government violated Judge Boasberg's order by failing to turn the planes around. *Id.*

15.     An investigation by The Times later found that most of the people who were deported to CECOT had no criminal background beyond immigration offenses, and that almost none of them had links to Tren de Aragua. Zolan Kanno-Youngs et al., *'Alien Enemies' or Innocent Men? Inside Trump's Rushed Effort to Deport 238 Migrants*, N.Y. Times (Apr. 15, 2025), https://www.nytimes.com/2025/04/15/world/americas/trump-migrants-deportations.html.

16.     Later reporting also revealed that the deportations had been planned for months, that El Salvador had reached an agreement with the United States to hold deportees under certain conditions, and that Judge Boasberg's order touched off fast-moving discussions within the executive branch about whether to proceed. Zolan Kanno-Youngs et al., *Behind Trump's Deal to Deport Venezuelans to El Salvador's Most Feared Prison*, N.Y. Times (Apr. 30, 2025), https://www.nytimes.com/2025/04/30/us/politics/trump-deportations-venezuela-el-salvador.html.

### The Times's FOIA Requests

17.     In April and May 2025, Zolan Kanno-Youngs, a reporter at The Times, submitted five FOIA requests—three to DHS, two to State—about the March 2025 AEA deportations.

4

18.    Broadly speaking, these requests seek (1) copies of the agreement(s) under which El Salvador agreed to hold deportees from the United States, and (2) communications between senior DHS, State, and other executive branch officials about these deportations.

*Request 1: The DHS El Salvador Agreement Request (-3680)*

19.    On April 16, 2025, Mr. Kanno-Youngs, on behalf of The Times, submitted a FOIA request to DHS.

20.    That request sought "[a]ll agreements (including any attachments or amendments thereto) between El Salvador and the United States stating that El Salvador . . . [would] hold individuals deported from the United States." It specified that "[t]he timeframe for my search is January 20, 2025, through the date this request is processed."

21.    DHS acknowledged receipt of the request on April 18, 2025 and assigned it tracking number 2025-HQFO-03680. In that same letter, DHS granted The Times's request for expedited processing.

22.    The Times has not received any further response to this request.

*Request 2: The State El Salvador Agreement Request (-15256)*

23.    On April 16, 2025, Mr. Kanno-Youngs, on behalf of The Times, submitted a FOIA request to State.

24.    That request was substantially similar to the DHS El Salvador Agreement Request. It sought "[a]ll agreements (including any attachments or amendments thereto) between El Salvador and the United States stating that El Salvador . . . [would] hold individuals deported from the United States." It specified that "[t]he timeframe for my search is January 20, 2025, through the date this request is processed."

25.     State acknowledged receipt of the request on April 21, 2025 and assigned it tracking number F-2025-15256. In that letter, State denied The Times's request for expedited processing and claimed that it needed additional time to respond to the request due to unusual circumstances, which "include the need to search for and collect requested records from other Department offices or Foreign Service posts."

26.     State erroneously closed this request but, after receiving correspondence from The Times, updated its status to in process on June 6, 2025.

27.     The Times has not received any further response to this request.

*Request 3: The State Communications Request (-15532)*

28.     On April 19, 2025, Mr. Kanno-Youngs, on behalf of The Times, submitted a FOIA request to State.

29.     That request sought "[e]mails between either Mauricio Claver-Carone or William Duncan or Michael Kozak or Dave Foran at the State Department and Kristi Noem at the State Department and Anthony Salisbury, Stephen Miller and Tom Homan at the White House from Jan. 27, 2025, to April 1, 2025 containing any one of the following terms: 'Alien Enemies Act,' 'AEA,' 'El Salvador,' 'Bukele,' 'TdA,' 'Boasberg,' 'Court order,' and 'GlobalX.'" (The reference to Kristi Noem "at the State Department" was a scrivener's error. As is widely known, Ms. Noem was the Secretary of Homeland Security at the time of the request.)

30.     State acknowledged receipt of the request on April 22, 2025 and assigned it tracking number F-2025-15532. In that letter, State denied The Times's request for expedited processing and claimed that it needed additional time to respond to the request due to unusual circumstances, which "include the need to search for and collect requested records from other Department offices or Foreign Service posts."

31. The Times has not received any further response to this request.

*Request 4: The DHS Noem Communications Request (-3845)*

32. On April 19, 2025, Mr. Mr. Kanno-Youngs, on behalf of The Times, submitted a FOIA request to DHS.

33. That request sought "[e]mails between Kristi Noem at DHS and Stephen Miller, Tom Homan, Mauricio Claver-Carone, William Duncan, and Michael Kozak from Jan. 27, 2025 to March 23, 2025 containing any of the following terms: 'Alien Enemies Act,' 'El Salvador,' 'Bukele,' 'TdA,' 'Boasberg,' and 'GlobalX.'"

34. DHS acknowledged receipt of the request on April 21, 2025, and assigned it tracking number 2025-HQFO-03845. In that same letter, DHS granted The Times's request for expedited processing.

35. DHS issued a final response to this request on April 24, 2025. In that response, DHS claimed that it conducted a search for responsive records but that this "search yielded no records that were responsive to this request."

36. The Times appealed this determination on May 5, 2025. In that appeal, The Times argued that DHS had failed to conduct an adequate search and that it was "highly implausible that no records would exist."

37. DHS never adjudicated The Times's appeal. The Times has not received any further response to this request.

*Request 5: The DHS Lyons/Feere Communications Request (-35141)*

38. On May 2, 2025, Mr. Kanno-Youngs, on behalf of The Times, submitted a FOIA request to DHS.

39. That request sought "[a]ny and all written communications, including but not limited to Emails or Signal Messages, between Todd M. Lyons or Jon Feere at the Department of Homeland Security and Stephen Miller, Tom Homan, Anthony Salisbury, Mauricio Claver-Carone, William Duncan and Michael Kozak from Jan. 27, 2025, to March 23, 2025 containing any one of the following terms: 'Alien Enemies Act,' 'El Salvador,' 'Bukele,' 'TdA' 'Boasberg,' and 'GlobalX.'"

40. DHS acknowledged receipt of the request on May 7, 2025 and assigned it tracking number 2025-ICFO-35141. In that letter, DHS denied The Times's request for expedited processing and its request for a fee waiver.

41. The Times appealed DHS's expedited processing and fee waiver determinations on May 19, 2025.

42. DHS responded to The Times's appeal on June 17, 2025. Its response claimed that the agency has not yet made a determination on the fee waiver. And it affirmed the agency's denial of expedited processing, claiming that Mr. Kanno-Youngs (who is, again, a reporter at The Times) had failed to demonstrate "that [he] represent[s] an organization that is primarily engaged in disseminating information," and that the request (which, again, concerned the government's widely covered efforts to summarily deport individuals, many of whom were later found to be unconnected to Tren de Aragua, to a foreign prison under a little-used legal authority) did not raise "an urgency to inform the public about a federal government activity" or relate to "a matter of widespread media interest" that raised "possible questions about the government's integrity."

43. The Times has not received any further response to this request.

## CAUSES OF ACTION

### *Count 1 (The DHS El Salvador Agreement Request)—5 U.S.C. § 552*

44. The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

45. DHS is an agency subject to FOIA, and it must therefore conduct an adequate search using reasonable efforts for responsive records, release any disclosable records in its possession at the time of the request, and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

46. DHS has failed to meet the statutory deadline for making a determination in response to The Times's request. DHS's April 18, 2025 acknowledgement letter was not a determination. And more than 20 business days have elapsed since DHS received the request.

47. The Times has therefore exhausted all available administrative remedies with respect to this request. 5 U.S.C. § 552(a)(6)(C)(i).

48. DHS is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

49. No exemptions permit the withholding of the records sought by this request.

50. The Times is thus entitled to an order compelling DHS to produce records responsive to this request.

### *Count 2 (The State El Salvador Agreement Request)—5 U.S.C. § 552*

51. The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

52. State is an agency subject to FOIA, and it must therefore conduct an adequate search using reasonable efforts for responsive records, release any disclosable records in its possession at the time of the request, and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

53.   State has failed to meet the statutory deadline for making a determination in response to The Times's request. The State's April 21, 2025 acknowledgement letter was not a determination. In that letter, State invoked the "unusual circumstances" provision, but failed to specify "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). And, in any event, more than 30 business days have elapsed since State received the request.

54.   The Times has therefore exhausted all available administrative remedies with respect to this request. 5 U.S.C. § 552(a)(6)(C)(i).

55.   State is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

56.   No exemptions permit the withholding of the records sought by this request.

57.   The Times is thus entitled to an order compelling State to produce records responsive to this request.

### Count 3 (The State Communications Request)—5 U.S.C. § 552

58.   The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

59.   State is an agency subject to FOIA, and it must therefore conduct an adequate search using reasonable efforts for responsive records, release any disclosable records in its possession at the time of the request, and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

60.   State has failed to meet the statutory deadline for making a determination in response to The Times's request. State's April 22, 2025 acknowledgement letter was not a determination. In that response, State invoked the "unusual circumstances" provision, but failed to

10

specify "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). And, in any event, more than 30 business days have elapsed since State received the request.

61.    The Times has therefore exhausted all available administrative remedies with respect to this request. 5 U.S.C. § 552(a)(6)(C)(i).

62.    State is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

63.    No exemptions permit the withholding of the records sought by this request.

64.    The Times is thus entitled to an order compelling State to produce records responsive to this request.

### Count 4 (The DHS Noem Communications Request)—5 U.S.C. § 552

65.    The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

66.    DHS is an agency subject to FOIA, and it must therefore conduct an adequate search using reasonable efforts for responsive records, release any disclosable records in its possession at the time of the request, and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

67.    DHS failed to conduct an adequate search in response to this request. In its April 24, 2025 final response, it claimed that no responsive records existed. As The Times explained in its administrative appeal, this is "highly implausible."

68.    When The Times administratively appealed that determination on May 5, 2025, DHS failed to meet the statutory deadline for responding to that appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

11

69.    The Times has therefore exhausted all available administrative remedies with respect to this request. 5 U.S.C. § 552(a)(6)(C)(i).

70.    DHS is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

71.    No exemptions permit the withholding of the records sought by this request.

72.    The Times is thus entitled to an order compelling DHS to produce records responsive to this request.

### Count 5 (The DHS Lyons/Feere Communications Request)—5 U.S.C. § 552

73.    The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

74.    DHS is an agency subject to FOIA, and it must therefore conduct an adequate search using reasonable efforts for responsive records, release any disclosable records in its possession at the time of the request, and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

75.    DHS has failed to meet the statutory deadline for making a determination in response to The Times's request. DHS's May 7, 2025 acknowledgement letter was not a determination. And more than 20 business days have elapsed since DHS received the request.

76.    The Times has therefore exhausted all available administrative remedies with respect to this request. 5 U.S.C. § 552(a)(6)(C)(i).

77.    DHS is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

78.    No exemptions permit the withholding of the records sought by this request.

79. The Times is thus entitled to an order compelling DHS to produce records responsive to this request.

## **REQUEST FOR RELIEF**

80. WHEREFORE, The Times respectfully requests that this Court:

i. Declare that the records sought by the requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

ii. Order DHS and State to undertake an adequate search for the requested records and to provide those records to The Times within 20 business days of the Court's order;

iii. Award The Times the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA, 5 U.S.C. § 552(a)(4)(E)(i); and

iv. Grant The Times such other relief as this Court deems just and proper.

Dated: New York, New York  
     July 28, 2026

*/s/ David E. McCraw*  
David E. McCraw  
Jackson Busch  
Legal Department  
The New York Times Company  
620 Eighth Avenue  
New York, NY 10018  
Phone: (212) 556-4031  
Email: mccraw@nytimes.com  
     jackson.busch@nytimes.com

*Counsel for Plaintiff*